IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHNSON W. GREYBUFFALO,

OPINION and ORDER

               Plaintiff,

15-cv-8-bbc

       v.

EDWARD WALL, KELLI WILLARD WEST,
GARY BOUGHTON, SAMUEL APPAU,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Johnson Greybuffalo is proceeding on claims that defendants Edward Wall, Gary Boughton, Kelli Willard West and Samuel Appau violated the Religious Land Use and Institutionalized Persons Act and the free exercise clause of the United States Constitution by prohibiting plaintiff from participating in devotional services with other members of the Native American Church and participating in a sweat lodge ceremony using religious items that are important to adherents of that church. Plaintiff seeks declaratory and injunctive relief.

Defendants have filed a motion for summary judgment, dkt. #49, which is ready for review. Defendants' primary argument is that they have not stopped plaintiff from engaging in the religious exercises he is requesting. I agree with defendants that plaintiff is not entitled to a declaration or injunction regarding use of a gourd rattle or feather or wing fan because current policy allows Native American prisoners to use those items during group

1

worship.  In addition, I am dismissing the complaint as to defendant Appau because he is no longer employed at the prison, so he cannot provide any relief to plaintiff.

However, the record remains unclear whether plaintiff's other requests are now permitted.  Because defendants have not identified reasons for denying those requests, the case must proceed to trial.  Further, because plaintiff's request for relief is limited to declaratory and injunctive relief, the trial will be to the court rather than a jury.  Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 299 F.3d 643, 648 (7th Cir. 2002) ("If the only relief sought is equitable, such as an injunction or specific performance (a type of affirmative injunction), neither the party seeking that relief nor the party opposing it is entitled to a jury trial.").

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Johnson Greybuffalo is a prisoner in the custody of the Wisconsin Department of Corrections.  He is an adherent of the Native American Church, which is the faith of his tribe, the Sisseton-Wahpeton Oyate.

### A.  Religious Policies in the Wisconsin Department of Corrections

"Native American" is one of several "umbrella religion groups" recognized by the Department of Corrections.  Others include "Catholic," "Pagan," "Eastern Religions,"

"Jewish," Islam" and "Protestant." (Now the department recognizes a new group called "Humanistic/Atheist/Agnostic.") These groups are not necessarily specific to particular denominations but are "designed to appeal to a wide range of religious beliefs within a given faith group." Ewing Decl. ¶ 7, dkt. #52. There is no separate umbrella group for the Native American Church. Rather, defendants classify the Native American Church "as a religious sect falling under the Native American Religion Group." Dfts.' PFOF ¶ 46, dkt. #64.

If prisoners wish to participate in group worship or possess religious property, they must designate their affiliation with one of the umbrella religion groups. That designation determines which religious services and study groups a prisoner may attend, which religious property they may possess and which religious diet they may receive. In the absence of a more specific option, plaintiff has designated "Native American" as his religious group.

If a prisoner wants to engage in a religious practice or obtain a piece of religious property that is not yet authorized, he must submit a DOC-2075 form, "Request for New Religious Practice." The chaplain makes an initial recommendation, which is then reviewed by a committee and then the warden.

### B. Plaintiff's Religious Requests

In 2010, when plaintiff was incarcerated at the Wisconsin Secure Program Facility, he requested both a gourd rattle and a "wing/feather fan." Dkt. #63-5, exhs. dE and dF. (A feather fan is one large feather from a wing of a bird. A wing fan is an entire wing of a bird. Plaintiff does not suggest that there is any religious difference between the two types of

fans.)  The chaplain at the time (not a defendant) recommended approval of both requests. However, the "DAI Central Office" denied both requests.

With respect to the gourd rattle, the office designee wrote, "[a]though property items for Native American congregate [illegible] may expand in the future, the rattle would not apply as it's for a half-moon ceremony which does not exist."  With respect to the fan, the office designee wrote, "The DOC finds that growth in inmate populations, limited space, security needs and the need to control property limits [sic].  Property items were determined in conjunction with outside religious consultants.  A review of all Native American property items, congregate and individual, is currently occurring."

In November 2011, plaintiff was incarcerated at the Waupun Correctional Institution.  On November 29, 2011, he sent defendant Samuel Appau (the prison chaplain) an information request in which he asked Appau whether the prison would provide services for members of the Native American Church.  In response, Appau wrote the following: "We can't do that.  We do not have Native American Church services approved by DOC.  If we can get an approved Native American Church pastor we can bring him in to organize [services] after getting DOC to approve the NAC."

In December 2011, when plaintiff asked defendant Appau what he needed to do to get Native American Church services approved, Appau told plaintiff to fill out a DOC-2075 form.  Plaintiff provided Appau a completed form in which he asked the department to recognize the Native American Church as a religion.

Defendants have no record of what happened to plaintiff's request after he gave it to

4

defendant Appau. (Appau says that he recommended that plaintiff's request be granted.) In 2012, Appau left his employment as chaplain for the Waupun prison and he had no further involvement in the issues raised in this case.

In 2013, after plaintiff was transferred back to the Wisconsin Secure Program Facility, he asked his program supervisor about the status of his request.  In response, the supervisor wrote, "I checked with Madison and was told that they did not receive[] the DOC-2075 you are asking about.  Ms. West said that you should submit another one." Dkt. #1-1, exh. N, at 39.

In a DOC-2075 form dated April 30, 2013, plaintiff asked that the Native American Church be recognized as its own umbrella religious group.  As part of that recognition, plaintiff asked for approval of various religious property items, such as a water drum, gourd rattle, eagle-bone whistle, ritual/ceremonial staff, feather fan, feather, cedar, sage, flag root, tobacco, corn husks, corn pollen, sacred medallion, medicine bag and various religious garments.   On July 12, 2013, the Religious Practices Advisory Committee, including defendant Kelli Willard West, recommended denial of the request.  (Defendants do not explain why the chaplain did not make an initial recommendation.)

In its lengthy decision, the committee did not address the merits of plaintiffs' particular requests.  Instead, the committee explained the reasoning for using umbrella religion groups.  The purpose of those groups, the committee said, was to "meet spiritual needs of as many inmates as possible within the limits of institution time, space, staff, volunteer   and   resource   availability"   and   "to   accommodate   the   breadth   of

sub-group/denomination beliefs and practices with similar theology." The committee stated that "[i]t would be impossible for WI-DOC to provide congregate programming to accommodate all inmate spiritual practices because of the wide diversity and sometimes very individualistic nature of religious beliefs and practices."

The committee described other ways that prisoners can exercise their religion, such as individual study and meditation, participating in annual celebrations for their umbrella religion group, receiving visits from a religious volunteer and using religious property such as books and literature. The committee did not consider plaintiff's particular requests for religious property and it did not explain its failure to do so.

Tim Haines, the warden at the time, affirmed the committee's decision. (Defendant Gary Boughton is the current warden of the Wisconsin Secure Program Facility.)

C. <u>Native American Religious Practices at the Wisconsin Secure Program Facility</u>

The prison holds a sweat lodge ceremony once a month. The ceremony is led by an outside volunteer who is a Native American spiritual advisor. Approximately 16 prisoners participate each month. In addition, the prison holds a pipe and drum congregate service twice a month for prisoners in the Native American group. Plaintiff attends both the sweat lodge ceremony and the pipe and drum service on a regular basis.

In order to sing songs properly, plaintiff believes that he needs a gourd rattle and a water drum "for the proper sound or harmony to be reached for proper healing and prayer to occur in the Ceremony." Plt.'s Decl. ¶ 20, dkt. #63. (Plaintiff says that a water drum

6

"is a small kettle with some rocks and some coals inside of it filled between halfway and three-quarters of the way with water, with some deer hide stretched around it, and tied with small gourds . . . with a rope about 3 1/2 to 4 feet long."  Plt.'s Dep., dkt. #55, at 49.)  In addition, plaintiff believes that he needs a wing fan for "aiding [his] prayers" and for "spiritual protection."  Plt.'s Decl., dkt. #63, at ¶¶ 22-23.  More specifically, a participant in a sweat lodge ceremony may use the fan to pull the incense of a smudge toward him or hold the fan in front of his face, covering his eyes and mouth during prayer, while others are singing.  Id. at ¶¶ 24-25.

Since 2010, the Department of Corrections has changed its policy regarding religious property.  A gourd rattle and feather or wing fan are now permitted for group use.  Dkt. #52-3.  This means that the property is retained by the prison rather than kept in the prisoner's cell.  The Wisconsin Secure Program Facility is in possession of one feather fan and one rattle for group use during Native American group worship.   (Defendants refer to the rattle as a gourd rattle, but plaintiff says that the rattle does not qualify as a gourd rattle.)  A wing fan is permitted for group use, but the prison does not have one.  The prison does not have a water drum.   (Defendants say that a water drum is allowed for group use, but a water drum is not listed on the department's policy as a permitted item.  Dkt. #52-3  Although plaintiff points out this discrepancy, defendants do not respond to it.)

7

OPINION

A.  Scope of Plaintiff's Claims

In his original complaint, plaintiff raised only one issue.   In particular, he challenged the denial of his request to recognize the Native American Church as a separate umbrella religion group.  However, in an order dated January 21, 2015, dkt. #3, I explained that recognition as an umbrella group is not a religious exercise in itself, so it cannot give rise to a claim under RLUIPA or the free exercise clause.  I directed plaintiff to identify particular religious exercises that he was unable to observe in the absence of recognition as an umbrella group.

In response, plaintiff raised three types of religious practices he was unable to observe. First, he said he is unable to participate in "devotional services" of the Native American Church, which include group prayer and religious songs.

Second, he said, he is unable to participate in a sweat lodge ceremony "pursuant to Native American Church principle[s]." In particular, plaintiff said that he wants to incorporate into the sweat lodge ceremony items of significance to the Native American Church.  Although he listed many items in his DOC-2075 request, the only items he discusses in both his complaint and his summary judgment declaration are a wing or feather fan, gourd rattle and water drum, Cpt. ¶ 34; Plt.'s Decl. ¶¶ 22-27, dkt. #63, so I will limit my consideration to those items.  Further, because plaintiff's allegations relate to the significance of these items during group worship, I am not construing his claim as including a request to keep these items in his cell for personal use.

8

Third, plaintiff said that he could not have a religious feast after a religious ceremony. However, I later dismissed this portion of the claim for plaintiff's failure to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a).  Dkt. #30.

In his summary judgment submissions, plaintiff raises a new issue, which is that he wants a separate sweat lodge ceremony for adherents of the Native American Church so that he feels more comfortable singing songs from the Church.  (Plaintiff says that other prisoners "have been highly offended" when he sang songs of his Church during a sweat lodge ceremony.  Plt.'s Decl. ¶ 29, dkt. #63.  As a result, plaintiff sings traditional Sioux songs rather than the songs of the Native American Church during ceremonies.)  Because plaintiff did not include this issue in his complaint, it is outside the scope of this lawsuit and I decline to consider it.  Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

In sum, the issues before the court now are whether defendants are violating plaintiff's rights under RLUIPA or the free exercise clause by refusing to allow him to participate in devotional services for the Native American Church and by refusing to approve a wing or feather fan, gourd rattle and water drum for group worship.

B.  Overview of the Law

Plaintiff is proceeding on claims under both RLUIPA and the free exercise clause of the First Amendment.  RLUIPA prohibits prisons receiving federal funds from imposing a

"substantial burden" on a prisoner's "religious exercise" unless the burden is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).  In applying this statute, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened.  Holt v. Hobbs, 135 S. Ct. 853, 862 (2015); Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008); Vision Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006).  If the plaintiff makes his required showing, the burden shifts to the defendants to demonstrate that their actions further a compelling governmental interest by the least restrictive means.  Cutter v. Wilkinson, 544 U.S. 709, 712 (2005).  If a plaintiff prevails on a RLUIPA claim, he is limited to declaratory and injunctive relief; he cannot obtain money damages.  Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012).

Under the free exercise clause, the general question is whether the restrictions on the prisoner's exercise of religion are reasonably related to legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Tarpley v. Allen County, Indiana, 312 F.3d 895, 898-99 (7th Cir. 2002).  In addition, the Court of Appeals for the Seventh Circuit sometimes has required prisoners to show a substantial burden, e.g., Thompson v. Holm, 809 F.3d 376, 379-80 (7th Cir. 2016); Kaufman v. McCaughtry, 419 F.3d 678, 683 (7th Cir. 2005), or that the restriction targets their faith, in accordance with Employment Division, Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990). E.g., Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006).  However, in other cases, the court of appeals has not applied these requirements.  Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009)

10

(applying <u>O'Lone</u> standard without discussing other requirements); <u>Conyers v. Abitz</u>, 416 F.3d 580, 585 (7th Cir. 2005) (same).  <u>See also Listecki v. Official Committee of Unsecured Creditors</u>, 780 F.3d 731, 744-45 (7th Cir. 2015) (questioning whether plaintiff must show substantial burden under First Amendment); <u>Lewis v. Sternes</u>, 712 F.3d 1083, 1085 (7th Cir. 2013) (stating that it is open question whether prisoner must prove discrimination in free exercise claim); <u>World Outreach Conference Center v. City of Chicago</u>, 591 F.3d 531, 534 (7th Cir. 2009) (plaintiff may prove free exercise claim with evidence of substantial burden <em>or</em> intentional religious discrimination).

In previous cases, I have applied <u>Smith</u>, 494 U.S. 872, in which the Supreme Court held that a free exercise claim requires the plaintiff to show that the government is targeting his religion for adverse treatment and is not applying a neutral rule of general applicability.  <u>E.g.</u>, <u>Ajala v. West</u>, No. 13-cv-546-bbc (W.D. Wis. Oct. 25, 2013); <u>Crouthers v. Zager</u>, No. 10-cv-308-bbc (W.D. Wis. Feb. 28, 2011).  <u>See also Grayson v. Schuler</u>, 666 F.3d 450, 452-53 (7th Cir. 2012) (stating in dicta that <u>Smith</u>'s "holding should apply to prison inmates along with everyone else").  Until the court of appeals says otherwise, I will continue to follow <u>Smith</u> in the context of prisoner cases.  However, it is not necessary to decide for the purpose of this defendants' summary judgment motion whether plaintiff must prove a substantial burden under the free exercise clause because the result of the motion would be the same either way.

## C. RLUIPA

### 1. Substantial burden

For the purpose of their motion for summary judgment, defendants do not deny that the Wisconsin Secure Program Facility receives federal funds or that plaintiff has a sincere religious belief with respect to all of the religious exercises at issue in this case. Rather, defendants' primary argument in their summary judgment brief is that they are not imposing a substantial burden on plaintiff's religious exercise because they are not preventing plaintiff from observing the religious exercises he has identified. In particular, they say that plaintiff does not need a separate umbrella group to obtain approval for his requests.

With respect to group devotional services, defendants say that they have no objection to those services, so long as plaintiff finds a volunteer to lead them. Dfts.' Br., dkt. #50, at 17. With respect to the items plaintiff wants, defendants say that "most" of those items "are already allowed under the existing policy. Nothing prevents Greybuffalo from purchasing the allowed items either to keep in his cell or donate to the Native American group for use in congregate services." Dfts.' Br., dkt. #50, at 17.

### a. Plaintiff's ability to attend group services

There is a disconnect between some of the arguments in defendants' brief and the responses of various prison officials to plaintiffs' requests. With respect to the request for group services, it is undisputed that defendant Appau told plaintiff in 2011 that he could not participate in group services for the Native American Church until the church was approved

by the department.  Even now defendants do not say that Appau provided misinformation to plaintiff.  Unfortunately, when plaintiff submitted his renewed request in 2013 (after the first one was lost), his request did not mention services expressly.  Presumably, plaintiff asked for the Native American Church to be recognized because he relied on Appau's earlier statement that the Church needed department approval before services could be held. Although plaintiff could have been more specific in his request, the response of defendant West and the religious advisory committee did not help clarify the issues.  Nothing in their denial of the request suggests that plaintiff had the option of participating in devotional services for the Native American Church if he found a volunteer to lead the services.  Rather, when listing plaintiff's options for religious expression, the committee wrote that plaintiff may "attend Umbrella Religion Group (URG) programming . . . which most closely meets [his] needs for congregate worship and study."  Dkt. #1-1, exh. A-4.

Defendants point to no policy that directly addresses this issue or to a statement by any prison official giving plaintiff permission to hold group services for the Native American Church so long as he found a suitable volunteer.  Accordingly, I conclude that defendants have failed to show that they are entitled to summary judgment on the asserted ground that they have not prevented plaintiff from participating in group services for the Native American Church.


b.  Plaintiff's ability to obtain religious property for group use

With respect to plaintiff's religious property requests, I agree that defendants are not

13

preventing plaintiff from using a gourd rattle or a feather or wing fan, at least not any more. Although prison officials (who are not defendants) denied plaintiffs' requests for these items in 2010, the items are now approved by the Department of Corrections for group use. In fact, it is undisputed that the prison *has* both a feather fan and a rattle that is used for sweat lodge ceremonies.

Plaintiff says that he wants a fan for *personal* use, so that he can keep it in his cell. However, as discussed above, that issue is outside the scope of this case because his amended complaint is limited to the use of religious property during group worship. Even in his summary judgment declaration, plaintiff's only discussion of the fan relates to use during a sweat lodge ceremony. Plt.'s Decl. ¶¶ 23-25, dkt. #63.

With respect to the rattle, plaintiff says that the one the prison has does not qualify as a proper gourd rattle for adherents of the Native American Church, but that is not relevant to plaintiff's claim. RLUIPA does not require prison officials to purchase religious property for prisoners using government funds; rather, RLUIPA limits the government's authority to impose *burdens* on religious exercise, which in this context would mean prohibiting prisoners from purchasing their own religious items for group use. Cutter v. Wilkinson, 544 U.S. 709, 720 n.8 (2005) ("[RLUIPA is] [d]irected at obstructions institutional arrangements place on religious observances. . . .[It] does not require a State to pay for an inmate's devotional accessories."); Charles v. Verhagen, 348 F.3d 601, 605 (7th Cir. 2003) (concluding that RLUIPA required prison to allow prisoner to possess Islamic prayer oil, but prisoner had responsibility for purchasing oil); Kaufman v. Schneiter, No.

14

07-C-45-C, 2007 WL 5613610, at *2 (W.D. Wis. Apr. 30, 2007) ("[T]he prison is not required under either RLUIPA or the free exercise clause to subsidize plaintiff's religious pursuits by purchasing religious reading material for him.").  Because prison policy now allows plaintiff to purchase a fan or rattle for group use, this aspect of plaintiff's claim is moot.  Smith v. Executive Director of Indiana War Memorials Commission, 742 F.3d 282, 287 (7th Cir. 2014) (repeal of policy moots claim challenging policy unless "the policy change does not actually correct the asserted . . . problem").

I cannot reach the same conclusion with respect to the water drum.  Plaintiff included a request for approval of such a drum in his 2013 DOC-2075 form, but defendant West and the Religious Practices Advisory Committee denied his request without any explanation. Further, defendants do not point to any policy that allows prisoners to use a water drum during a sweat lodge ceremony.  Accordingly, I conclude that defendants have not shown plaintiff's request for approval of a water drum is moot.

c.  Other arguments related to substantial burden

Defendants make two other arguments related to the issue of substantial burden, but neither is persuasive.  First, defendants say that plaintiff already possesses a number of religious property items.   Defendants do not explain the significance of that observation, but presumably they mean to argue that any inability by plaintiff to use a particular item is not a substantial burden because plaintiff has other ways of exercising his religion.  I have rejected a similar argument multiple times:

> The question under RLUIPA is not whether the defendants have imposed a substantial burden on *all* of a prisoner's religious exercises, but whether they have imposed a substantial burden on "any religious exercise," 42 U.S.C. § 2000cc–5(7)(A) (emphasis added), a standard the Court of Appeals for the Seventh Circuit has called "undeniably very broad." Korte v. Sebelius, 735 F.3d 654, 673–74 (7th Cir. 2013). In fact, nearly a decade ago, I rejected an argument made by a Wisconsin prison chaplain that a restriction on attending group services is not a substantial burden if the prisoner retained the ability to worship in other ways: "Unlike the First Amendment, RLUIPA protects more than the right to practice one's faith; it protects the right to engage in specific, meaningful acts of religious expression in the absence of a compelling reason to limit the expression." Meyer v. Teslik, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006).

Ajala v. West, No. 13-cv-545-bbc, 2014 WL 7338782, at *3 (W.D. Wis. Dec. 22, 2014). The Supreme Court has now confirmed the view that "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." Holt, 135 S.Ct. at 862. There could be a situation in which the lack of a particular item would not impose a substantial burden, either because the item lacked sufficient importance to a prisoner's religious exercise or because the prisoner had a different item that served the same religious purpose. However, defendants do not make either argument in their summary judgment brief, so I need not consider those issues.

Second, defendants cite plaintiff's deposition in which he agreed that he is "able to get some religious significance from the sweat lodge" ceremony that is provided at the prison. Plt.'s Dep., dkt. #55, at 35. However, defendants are conflating two different issues. The question in this case is not whether simply attending a different kind of sweat lodge ceremony violates plaintiff's rights; plaintiff is not arguing that he is offended by other kinds

16

of sweat lodge ceremonies.   Rather, the question is whether being unable to attend a ceremony conducted in accordance with his beliefs is a substantial burden on plaintiff's religious exercise.  A Christian might get some religious significance from attending a mosque or a synagogue, but that does not mean that participating in Jumuah would be sufficient to meet the spiritual needs of a Christian.  Again, defendants have not argued that devotional services and a water drum are unimportant to plaintiff's religious exercise, so I do not consider that issue.

2.  Compelling interest

The next question is whether defendants have shown as a matter of law that denying plaintiff's requests for devotional services and a water drum is the least restrictive means of furthering a compelling interest.  Although defendants include an argument in their brief that they have compelling penological interests for limiting the number of umbrella religious groups, that argument is not responsive to the relevant issues.  As discussed above, I did not allow plaintiff to proceed on a claim that defendants violated his rights by denying his request to create a new umbrella religious group.   The question is whether defendants violated plaintiff's rights by denying his requests for religious services and property items. Because defendants do not argue that they had compelling reasons for denying those requests, defendants are not entitled to summary judgment on plaintiffs' RLUIPA claim with respect to those requests.

17

D.  Free Exercise Clause

I reach the same conclusions with respect to plaintiff's claims under the free exercise clause.  As discussed above, plaintiff's claims regarding the fan and rattle are moot because those items are now permitted under prison policy.  To the extent that plaintiff believes that defendants should purchase particular religious items for him, that allegation could support a free exercise claim only if plaintiff could point to evidence that defendants were purchasing items for some religious groups and not others without a secular reason for doing so.  Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049, 1058 (W.D. Wis. 2009) (question under free exercise clause "is whether [the defendant] is singling out particular religions for special treatment without a secular reason for doing so") (citing Cruz v. Beto, 405 U.S. 319 (1972); Kaufman v. McCaughtry, 419 F.3d 678, 683–84 (7th Cir. 2005)).  Because plaintiff has not cited that type of evidence, his claim under the free exercise clause must be dismissed with respect to the rattle and fan.

Also, as discussed above, plaintiff's claims regarding devotional services and the water drum are not moot.  Defendants' only argument under the free exercise clause with respect to those claims is that the umbrella religion group policy is a rule of "general applicability" and is therefore permissible under Smith, 494 U.S. 872.  Again, that argument is not responsive to plaintiff's claims because I did not allow plaintiff to proceed on a claim challenging the umbrella religion group policy.  Accordingly, I am denying defendants' summary judgment motion with respect to plaintiff's claims under the free exercise clause regarding his requests for devotional services and a water drum.

18

E.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity because plaintiff has not shown that they violated clearly established law.  Carroll v. Carman, 135 S. Ct. 348, 350 (2014).  However, qualified immunity does not apply to claims for declaratory and injunctive relief.  Moss v. Martin, 614 F.3d 707, 712 (7th Cir. 2010). Because that is the only type of relief plaintiff is seeking in this case, defendants are not entitled to qualified immunity.

F.  Proper Parties

The remaining question on defendants' motion for summary judgment is whether plaintiff can seek relief against each of the defendants.  When a party seeks damages for a civil rights violation, the question is whether the defendant was "personally involved" in the violation.  Childress v. Walker, 787 F.3d 433, 439-40 (7th Cir. 2015).  However, when a party is seeking only injunctive or declaratory relief , "it is irrelevant whether the [defendant] participated in the alleged violations." Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011).  Rather, the question is whether the defendant has the authority to grant the relief. Williams v. Doyle, 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007) ("[A] claim for injunctive relief can stand only against someone who has the authority to grant it.").

Under that standard, I agree with defendants that plaintiff's complaint must be dismissed as to defendant Appau.  Because Appau is not employed at the Wisconsin Secure Program Facility, he  would have no ability to comply with an injunction.  Similarly, a party

19

cannot obtain declaratory relief unless the declaration would alter the parties' legal relationship.   Deveraux v. City of Chicago, 14 F.3d 328, 331 (7th Cir.1994).   Because Appau no longer has any authority over plaintiff, a declaration that Appau violated plaintiff's rights in the past would have no legal effect.   Cornucopia Institute v. U.S. Dept. of Agriculture, 560 F.3d 673, 676 (7th Cir. 2009) (concluding that claim for declaratory relief was moot after plaintiff received all its requested injunctive relief); St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 627-28 (7th Cir.2007) (concluding that declaratory relief was moot along with injunctive relief).

Defendants argue that defendant West should be dismissed as well, but their argument focuses on whether West may be held liable for money damages.   It is undisputed that West is on a committee that plays some role in approving religious requests.   Although defendants say that West does not have the *final* word on those requests, defendants cite no authority for the view that only final decision makers are appropriate defendants in a case for injunctive or declaratory relief.   Accordingly, I decline to dismiss the complaint as to West at this time.

Defendants do not deny that Edward Wall and Gary Boughton are proper defendants. Because Boughton is the current warden of the Wisconsin Secure Program Facility, I see no reason to question his status as a defendant.   However, Edward Wall is no longer Secretary of the Wisconsin Department of Corrections.   Accordingly, I am substituting Jon Litscher, the current Secretary, for defendant Wall.   Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases

to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## F.  Issues for Trial

Although I am denying some aspects of defendants' motion for summary judgment, plaintiff still will have to prove his claim at trial.  In particular, plaintiff should be prepared to submit evidence regarding the sincerity of his religious beliefs, the burden imposed on his religious exercise by not having a water drum and by not having an opportunity to participate in group devotional services and the extent to which defendants are treating adherents of the Native American Church less favorably than adherents of other faiths.

More generally, both sides should consider issues that may arise at trial.  For example, the parties did not discuss in their summary judgment submissions the implications of defendants' rule that group religious services must be led by a nonprisoner volunteer.  If plaintiff objects to that rule, he will need to be prepared to show that a nonprisoner volunteer is not needed for the proposed service and that the rule requiring a volunteer is discriminatory or imposes a substantial burden on his religion.  If he agrees that a nonprisoner volunteer is needed, plaintiff will have to either identify a volunteer who is able and willing to lead the service or show that defendants have made greater efforts to find volunteers for other faiths.  Regardless whether a volunteer is needed, plaintiff will not be entitled to an injunction requiring the prison to hold group services unless plaintiff shows that there are other like minded prisoners at the Wisconsin Secure Program Facility who

want to participate in services for the Native American Church. Obviously, plaintiff cannot conduct a group worship service by himself.

At trial, both sides should limit their evidence and arguments to the remaining claims as the court has defined them. In their summary judgment materials, both sides discussed the issue whether denying plaintiff's request for a separate umbrella group violated his rights. Again, because being recognized as an umbrella group is not a religious exercise, that is not the proper focus. Rather, the question is whether defendants are violating plaintiff's rights by preventing him from participating in particular devotional services and obtaining particular religious items. The way the Department of Corrections has chosen to group religions is relevant only to the extent that defendants take the position that they cannot grant plaintiff's requests unless the Native American Church is recognized as a separate umbrella group. Because defendants have disavowed that view in their summary judgment brief, it should not be an issue at trial.

Another issue that is unlikely to be relevant at trial is plaintiff's belief that defendants have an undisclosed "Religious Practice Manual" for Native American religions. Plaintiff discussed that alleged document many times throughout his summary judgment materials, but it is not clear why. To begin with, although plaintiff seems to believe that defendants are hiding the manual, he does not point to a discovery response in which defendants refused to produce it or even stated a position on whether the document exists. More important, even if the manual exists, plaintiff does not explain how it is relevant to the case. Again, the question is whether defendants are violating federal law by preventing plaintiff from

22

engaging in particular religious exercises.  The question is not whether defendants are following or violating a particular prison policy.

Further, plaintiff does not identify any reason to believe that the alleged manual addresses the particular issues in this case.  Plaintiff seems to believe that the alleged manual is proof that defendants are discriminating against him because it suggests that defendants have a policy that is specific to Native American religions, but plaintiff does not identify any reason to believe that the alleged policy treats Native Americans less favorably than anyone else.  In fact, the article he cites about the alleged manual stated that it was created in cooperation with the Oneida Business Committee "to protect Native Americans in custody." Plt.'s Decl., exh. dG, dkt. #63-6.  In any event, even if the manual was not favorable to Native Americans, it is not clear how it would shed any light on whether defendants are discriminating against plaintiff in particular.  What matters is defendants' *conduct*, regardless of the language in a policy.

Finally, before committing additional resources to a trial, the parties should consider whether there are any issues that need to be tried.  Because defendants have not identified any objections to plaintiff's requests, this seems to be a case that could be resolved by the parties.  If the parties agree that mediation would be helpful, they may contact Peter Oppeneer, the clerk of court, for assistance in conducting the mediation.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Edward Wall, Gary Boughton, Kelli Willard West and Samuel Appau, dkt. #49, is GRANTED as to defendant Appau and as to plaintiff Johnson Greybuffalo's requests for use of a gourd rattle and feather or wing fan during sweat lodge ceremonies.  Plaintiff's amended complaint is DISMISSED as to Appau.  Defendants' motion is DENIED with respect to plaintiff's claims that defendants Wall, Boughton and West are violating plaintiff's rights under the Religious Land Use and Institutionalized Persons Act and the free exercise clause by denying his requests for devotional services for the Native American Church and for group use of a water drum.

2.  Jon Litscher is SUBSTITUTED for Edward Wall in accordance with Fed. R. Civ. P. 25(d).

Entered this 15th day of April, 2016.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

24